IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **CHAD PITCHER**, | Case No. 3:20-cv-869-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **PAT GARRETT; WASHINGTON COUNTY; JOHN GANGER; BRENNA COLLINS; JOHN DOES (1-5); and JANE DOES (1-5),** | |
| Defendants. | |

Chad Pitcher, Plaintiff *pro se*.

Kimberly A. Stuart, Senior Assistant County Counsel, OFFICE OF WASHINGTON COUNTY COUNSEL, 155 N First Avenue, Suite 340, MS #24, Hillsboro, OR 97124. Of Attorneys for Defendants Pat Garrett, Washington County, and John Ganger.

Jennifer K. Oetter and Iain Armstrong, LEWIS BRISBOIS BISGAARD & SMITH LLP, 888 SW Fifth Avenue, Suite 900, Portland, OR 97204. Of Attorneys for Defendant Brenna Collins.

**Michael H. Simon, District Judge.**

Plaintiff Chad Pitcher, representing himself, brings this lawsuit against, among others,

Defendants Washington County Sheriff Pat Garrett, Washington County Deputy Sheriff John

Ganger, and Washington County (collectively, the County Defendants). Plaintiff also sues

Defendant Brenna Collins, who was employed to provide medical services at the Washington

County Jail. Plaintiff further sues ten fictitiously named defendants, John Does 1-5 and Jane

Does 1-5. Plaintiff alleges that he sustained injuries getting out of a prisoner transport van, after

being transferred from the Washington County Jail to the Washington County Courthouse. Plaintiff also alleges that he did not receive adequate medical care for his injuries. Plaintiff asserts claims under 42 U.S.C. § 1983, alleging that Defendants violated his rights under the Eighth and Fourteenth Amendments to the United States Constitution. The County Defendants have moved to dismiss, arguing that Plaintiff fails to state a claim against the County Defendants and also that Defendant Ganger has qualified immunity. In response, Plaintiff conceded that his claims against Defendants Garrett and Washington County should be dismissed. Accordingly, all claims against Defendants Garrett and Washington County are dismissed. For the reasons discussed below, the Court also grants Defendant Ganger's motion to dismiss.

## STANDARDS

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual allegations to state a facially plausible claim for relief. *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1140 (9th Cir. 2012). To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). The court must draw all reasonable inferences from the factual allegations in favor of the plaintiff. *Newcal Indus. v. Ikon Office Solution*, 513 F.3d 1038, 1043 n.2 (9th Cir. 2008). The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

PAGE 2 – OPINION AND ORDER

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Mashiri v. Epstein Grinnell & Howell*, 845 F.3d 984, 988 (9th Cir. 2017) (quotation marks omitted).

A court must liberally construe the filings of a self-represented, or *pro se*, plaintiff and afford the plaintiff the benefit of any reasonable doubt. *Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010). Further, "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Florer v. Congregation Pidyon Shevuyim, N.A.*, 639 F.3d 916, 923 n.4 (9th Cir. 2011) (quotation marks omitted). "Unless it is absolutely clear that no amendment can cure the defect, . . . a *pro se* litigant is entitled to notice of the complaint's deficiencies and an opportunity to amend prior to dismissal of the action." *Garity v. APWU Nat'l Labor Org.*, 828 F.3d 848, 854 (9th Cir. 2016) (alteration in original) (quoting *Lucas v. Dep't of Corr.*, 66 F.3d 245, 248 (9th Cir. 1995) (per curiam)). Under Federal Rule of Civil Procedure 8(a)(2), however, every complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This standard "does not require 'detailed factual allegations,'" but does demand "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

PAGE 3 – OPINION AND ORDER

**BACKGROUND**

Plaintiff's claim against Defendant Ganger arises out of an injury Plaintiff alleges he sustained while being transported from the Washington County Jail to the Washington County Courthouse on May 3, 2019. Along with other individuals in custody, Plaintiff arrived at the Courthouse via a transport van driven by Ganger. Plaintiff was restrained with "belly chains, handcuffs, and leg shackles." Upon arrival, Ganger and a "Doe Defendant" ordered Plaintiff to exit the van but did not provide any assistance, despite Plaintiff's hesitation to exit unassisted. According to Plaintiff, the van exit had damaged rubber molding. Plaintiff caught his foot on the allegedly damaged rubber molding, tripped out of the van, fell against a metal door, and sustained injuries. After his fall, Plaintiff heard Ganger and the Doe Defendant comment about the van "not being fixed."

Immediately after sustaining this injury, Plaintiff was treated by a nurse. Plaintiff alleges that his injuries were so severe that he had to be placed in a wheelchair for his court appearance. Plaintiff also alleges that the nurse only gave him ice and Tylenol but provided no other medical treatment and refused Plaintiff's request to see a doctor. Plaintiff further alleges that the nurse did not bandage a one-inch laceration on Plaintiff's head or provide him with a neck brace or sling to assist with his injuries and pain. After Plaintiff made numerous medical requests, Defendant Collins and another "Doe Defendant" provided Plaintiff with a sling and "exercise packet." Eventually, Plaintiff also was given an x-ray, although he alleges that he was not shown its results. Plaintiff alleges that he suffers ongoing pain in his neck and shoulder, limited shoulder mobility, headaches, and has a scar on his head from the laceration. He adds that he has been unable to exercise and has experienced sleep deprivation and "other psychological trauma."

**DISCUSSION**

**A.  Failure to State a Claim**

A pretrial detainee's lawsuit under 42 U.S.C. § 1983 lawsuit for inadequate care or treatment is evaluated under the Due Process Clause of the Fourteenth Amendment, rather than the Eighth Amendment's prohibition against cruel and unusual punishment. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1067-68 (9th Cir. 2016) (en banc). This analysis and the related standards are distinct from a claim brought by a prisoner after conviction, which is evaluated under the Eighth Amendment. *See Smith v. Washington*, 781 F. App'x 595, 598 (9th Cir. 2019).

Plaintiff alleges that Ganger allowed Plaintiff to exit from the van under unsafe conditions and that Plaintiff was injured as a result. Because Plaintiff alleges that Ganger permitted an unsafe situation, rather than taking direct action to hurt Plaintiff, these allegations are analyzed under a "failure-to-protect" framework, rather than "excessive force". *See Castro*, 833 F.3d at 1068-70 (explaining the application of the failure-to-protect framework). In an excessive force case, a plaintiff must allege that a prison official took direct action against the plaintiff whereas in a failure-to-protect case a plaintiff alleges that the prison official created or permitted conditions under which a plaintiff was injured. *Compare Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015) (explaining the excessive force framework when a pretrial detainee was tased and forcibly removed from his cell), *with Castro*, 833 F.3d at 1071-72 (explaining the failure-to-protect framework when a prison official's decision to put two pretrial detainees in one cell when both were intoxicated and one was belligerent and violent).

As explained in *Castro*, the failure-to-protect standard requires that:

(1)    The defendant made an intentional decision with respect to the conditions under which the plaintiff was confined;

(2)    Those conditions put the plaintiff at substantial risk of suffering serious harm;

> (3)    The defendant did not take reasonable available measures to abate that risk, even though a reasonable officer in the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and
>
> (4)    By not taking such measures, the defendant caused the plaintiff's injuries.
>
> With respect to the third element, the defendant's conduct must be objectively unreasonable, a test that will necessarily turn on the acts and circumstances of each particular case.

*Id.* at 1071 (simplified).

An important distinction between the claims of a convicted prisoner under the Eighth Amendment and the claims of a pretrial detainee under the Fourteenth Amendment is that to plead the latter a plaintiff need only allege that the conduct was objectively unreasonable and not that the actor subjectively had a "sufficiently culpable state of mind." *Id.* at 1070-71. Here, the County Defendants argue that Plaintiff has failed to state a claim because he has not alleged conduct that meets the second, third, and fourth prongs of the failure-to-protect test. The County Defendants do not argue that Plaintiff has not alleged facts supporting the first prong, which asks whether the defendant made an intentional decision about the conditions of confinement.

### 1.    Whether a substantial risk of serious harm was posed by the alleged conditions

Plaintiff alleges that he was asked, while bound by "belly chains, handcuffs, and leg shackles," to exit a van unassisted when that van had damaged rubber molding close to a metal door. The County Defendants argue that to meet the second prong of the failure-the-protect test (substantial risk of serious harm), Plaintiff must demonstrate that the risk was "objectively intolerable." The County Defendants, however, cite to Eighth Amendment precedent[1] concerning

---

[1] Defendants cite *Baze v. Rees*, 553 U.S. 35, 50 (2008) ("We have explained that to prevail on such a claim there must be a 'substantial risk of serious harm,' an 'objectively

postconviction prisoners, a standard that does not apply to pretrial detainees. The Eighth

Amendment's objectively intolerable framework is not imported into the Fourteenth Amendment

analysis, where the relevant question simply is whether the conditions created a "substantial risk

of serious harm." The County Defendants further argue that because Plaintiff's fall could have

resulted from other causes, such as another detainee pushing him, the circumstances did not

create a substantial risk. The existence of such a possibility of an alternative cause, however,

relates to causation and is unrelated to whether the situation permitted under Ganger's

supervision created a substantial risk of serious harm.

    Plaintiff has alleged sufficient facts to meet the second prong. Without the ability to catch

himself with his legs or hands due to the use of restraints, without assistance stepping down, with

a trip hazard present, and with some indication that Ganger had prior knowledge of the trip

hazard, Plaintiff encountered a substantial risk of serious harm.

###    2.    Whether Ganger failed to abate and recklessly disregarded the risk

    Under the third prong, *Castro* directs a court to examine whether there are factual

allegations showing that a defendant "did not take reasonable available measures to abate that

risk, even though a reasonable officer in the circumstances would have appreciated the high

degree of risk involved—making the consequences of the defendant's conduct obvious." *Castro*,

833 F.3d at 1071. This standard requires a reckless disregard; a "mere lack of due care" (or

simple negligence) cannot be the basis for a Fourteenth Amendment violation. *Id*. Plaintiff

alleges that he sought but did not receive assistance in getting out of the van. Had Ganger given

---

intolerable risk of harm' that prevents prison officials from pleading that they were 'subjectively
blameless for purposes of the Eighth Amendment.'").

Plaintiff the requested assistance, the risk of a fall would have been at least partially abated. The facts alleged show that there were reasonably available measures to abate the risk.

Whether a reasonable officer would have appreciated the degree of risk involved such that the consequences of the conduct were obvious is not apparent on the facts alleged. Although Plaintiff was allegedly injured by his fall, which allegedly resulted from the conditions permitted by Ganger, a court should not allow hindsight to overwhelm an analysis of what a reasonable officer should have thought at the time. *See Kingsley,* 576 U.S. at 397.

Plaintiff has alleged that Ganger and a Doe Defendant made a comment indicating that they were aware of the damaged molding before Plaintiff's fall. Plaintiff, however, has not alleged that the damaged molding was in such a state of disrepair that Plaintiff would have been unable to step over it even with his limited mobility as shackled, that the van was so far from the ground that unassisted exit when shackled was inherently dangerous, that the various restraints binding Plaintiff made him particularly vulnerable to the molding or the step down, or any other facts showing that the apparent degree of danger was sufficiently high that it was objectively unreasonable and, thus, that Ganger acted with reckless disregard. On the facts alleged, a reasonable officer in Ganger's position would not necessarily have appreciated the degree of risk involved. Because Plaintiff has not shown that the risk was apparent enough that Ganger's conduct amounted to reckless disregard, no Fourteenth Amendment violation has been alleged.

This is not to say that Ganger was not negligent, a question about which the Court makes no finding and draws no conclusion. Even if Ganger were negligent, however, Plaintiff would have a remedy for such negligence in state court. Mere negligence does not become a constitutional violation, even when committed by a state actor against a pretrial detainee in state custody.

### 3.  Whether  Ganger's inaction caused of Plaintiff's injuries

Although the Court finds that Plaintiff cannot meet the *Castro* test given the lack of objective unreasonableness, it is reasonably inferred from Plaintiff's allegations that had Ganger provided the requested assistance to Plaintiff upon his dismount or required that the van's damaged molding be repaired before use, Plaintiff would not have fallen into the metal door. The Court finds that Plaintiff has sufficiently alleged facts showing that by not taking reasonable measures Ganger was the cause Plaintiff's injuries.

### 4.  Conclusion

Plaintiff has not alleged facts sufficient to state a claim under the Fourteenth Amendment for failure to protect a pretrial detainee. Plaintiff must allege facts showing that the risk of harm was objectively unreasonable such that a reasonable officer in Ganger's position would have understood the risk of harm and that failure to abate that risk amounts to "reckless disregard." Plaintiff has not done so and has merely alleged negligence.

## B.  Qualified Immunity

County Defendants also argue that Ganger is protected by qualified immunity. Plaintiff, without substantive argumentation, asserts that Ganger is not so protected. "Qualified immunity shields federal and state officials from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct." *Ashcroft v. al-Kidd,* 563 U.S. 731, 735 (2011) (citation omitted). "A Government official's conduct violates clearly established law when, at the time of the challenged conduct, '[t]he contours of [a] right [are] sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Id.* at 2083 (alterations in original) (quoting *Anderson v. Creighton,* 483 U.S. 635, 640 (1987)). There need not be case law "directly on point, but existing precedent must have placed the

statutory or constitutional question beyond debate." *Id.* "Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments about open legal questions." *Id.* at 2085.

"The doctrine of qualified immunity protects government officials from liability for civil damages." *Wood v. Moss*, 572 U.S. 744, 757 (2014); *Krainski v. Nevada ex. Rel. Bd. of Regents*, 616 F.3d 963, 968 (9th Cir. 2010). "Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). "Whether qualified immunity can be invoked turns on the 'objective legal reasonableness' of the official's acts. And reasonableness of official action, in turn, must be 'assessed in light of the legal rules that were clearly established at the time [the action] was taken.'" *Ziglar v. Abbasi*, 137 S.Ct. 1843, 1866 (2017) (citation omitted) (alteration in original) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 819 (1982) and *Anderson*, 483 U.S. at 638). "The privilege is an *immunity from suit* rather than a mere defense to liability; . . . it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (quotation marks omitted) (emphasis in original). For this reason, the Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (per curiam). Qualified immunity, however, is only an immunity from suit for damages, it is not an immunity from suit for declaratory or injunctive relief. *See L.A. Police Protective League v. Gates*, 995 F.2d 1469, 1472 (9th Cir. 1993).

In *Saucier*, the Supreme Court outlined a two-step process for determining the applicability of the qualified immunity doctrine. 533 U.S. at 200. The first step is to determine "whether a constitutional right would have been violated on the facts alleged." *Id*. The second

step is to determine "whether the right was clearly established." *Id*. The constitutional issue,

however, need not be addressed first in every case. *Pearson*, 555 U.S. at 227. Regardless of

whether the constitutional violation occurred, the officer should prevail if the right asserted by

the plaintiff was not clearly established or the officer could have reasonably believed that his

particular conduct was lawful. *Romero v. Kitsap Cty.*, 931 F.2d 624, 627 (9th Cir. 1991).

To determine whether a government official's conduct violates clearly established law, "a

court must ask whether it would have been clear to a reasonable officer that the alleged conduct

was unlawful in the situation he confronted." *Ziglar*, 137 S.Ct. at 1867. To be clearly established,

"[i]t is not necessary . . . that the very action in question has previously been held unlawful. That

is, an officer might lose qualified immunity even if there is no reported case directly on point.

But in the light of pre-existing law, the unlawfulness of the officer's conduct must be apparent.

*Id.* (citations and quotation marks omitted). "The 'clearly established' requirement 'operates to

ensure that before they are subject to suit, [government officials] are on notice their conduct is

unlawful.'" *Eng v. Cooley*, 552 F.3d 1062, 1075 (9th Cir. 2009) (quoting *Hope v. Pelzer*, 536

U.S. 730, 739 (2002)) (alteration in original). Thus, the key inquiry in determining whether an

officer has qualified immunity is whether the officer had "fair warning" that his conduct was

unconstitutional. *Hope*, 536 U.S. at 741; *see also Saucier*, 533 U.S. at 202 (noting that the law

need not be a "precise formulation of the standard" as long as "various courts have agreed that

certain conduct is a constitutional violation under facts not distinguishable in a fair way from the

facts presented in the case at hand"); *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1064 (9th

Cir. 2013) ("Rather, the relevant question is whether 'the state of the law at the time gives

officials fair warning that their conduct is unconstitutional.'") (quoting *Bull v. City & Cty. of San

Francisco*, 595 F.3d 964, 1003 (9th Cir. 2010) (en banc) ("[T]he specific facts of previous cases

need not be materially or fundamentally similar to the situation in question."))). When

considering whether qualified immunity applies, the court must resolve all factual disputes in favor of the party asserting the injury. *Ellins*, 710 F.3d at 1064.

Plaintiff bears the burden of showing that the right was clearly established at the time of the alleged violation. *Sorrels v. McKee*, 290 F.3d 965, 969 (9th Cir. 2002). He has not, however, brought any precedent to the Court's attention showing that Ganger violated a clearly established right. "Although this Court's caselaw does not require a case directly on point for a right to be clearly established, existing precedent must have placed the statutory or constitutional question beyond debate. In other words, immunity protects all but the plainly incompetent or those who knowingly violate the law." *Kisela v. Hughes*, 138 S. Ct. 1148, 1152 (2018) (simplified). In *Kisela*, the Supreme Court emphasized that the "clearly established law" should not be defined at a high level of generality. *Id.*

Ganger has qualified immunity if existing caselaw put him on notice that causing Plaintiff to exit the bus while shackled, without assistance, when the rubber molding was damaged such that someone could catch their foot and fall amounts to a violation of the Fourteenth Amendment. That, however, is not the case.

Caselaw has clearly not established a pretrial detainee's right to be free from trip hazards. *See, e.g., Hernandez v. Tulare Cty. Corr. Ctr.*, 2018 WL 4501113, at *7 (E.D. Cal. Sept. 18, 2018) (holding that prison officials were not on notice that causing a pretrial detainee to ascend steps in ankle shackles, causing him to trip and fall, was a constitutional violation). There is some caselaw discussing slip-and-fall accidents involving prisoners under the Eighth Amendment standard. Although the standards are different because Eighth Amendment claims require subjective intent, "a number of courts have concluded, at both the motion to dismiss and summary judgment stages, that poorly maintained surfaces or leaky roofs do not pose a substantial risk of serious harm supporting a constitutional violation and are merely negligence

claims." *Reyes v. Brown*, 2017 WL 1355004, at *5 (S.D. Cal. Apr. 4, 2017), *report and recommendation adopted*, 2017 WL 2928777 (S.D. Cal. July 10, 2017) (citing a number of decisions, primarily under the Eighth Amendment, on trip and falls due to hazardous conditions).

The Court also finds persuasive the reasoning of the U.S.  District Court for the Southern District of Indiana, in analyzing qualified immunity in a prisoner slip-and-fall case under the Eighth Amendment. *Ashlock v. Sexton*, 2016 WL 3476367 (S.D. Ind. June 27, 2016). The court found that "[r]equiring an inmate to descend stairs, with his hands cuffed behind his back, in sandals, without any assistance or means with which to brace himself, is sufficiently hazardous under the Eighth Amendment." *Id.* at *4. The court also found an issue of fact regarding whether the corrections officer acted with deliberate indifference. *Id.* at *4-5. Regarding qualified immunity, however, the court stated that "no Supreme Court case or 'robust consensus of cases of persuasive authority' in the Courts of Appeals establishes the right to physical assistance when an inmate is required to descend stairs while his hands are cuffed behind his back." *Id.* at *6 (quoting *Taylor v. Barkes*, 135 S. Ct. 2042, 2044 (2015)). The court concluded that "[g]iven the facts in this case, this court cannot say that only someone 'plainly incompetent' or who 'knowingly violate[s] the law' would have perceived that descending stairs while handcuffed behind the back and without physical assistance violates an inmate's Eighth Amendment rights." *Id.* (first alteration added, second alteration in original). Even though Plaintiff's claim falls under the Fourteenth Amendment, the different standard does not support a different outcome in analyzing qualified immunity.

As County Defendants highlight, the cases in which a corrections officer or other prison staff are held accountable for a failure to prevent injuries to pretrial detainees require a significantly greater awareness of the likelihood of risk than Plaintiff alleges. *Compare Morales v. City of N. Las Vegas*, 272 F. Supp. 3d 1216, 1222-23 (D. Nev. 2017) (placing two pretrial

detainees in the same cell, one of whom killed the other, when both had known mental illness, without more, was not constitutionally impermissible); *with Castro*, 833 F.3d at 1065 (knowledge that pretrial detainee was combative and violent rendered decision to place him in a cell with another pretrial detainee a constitutional violation). The facts as alleged by Plaintiff do not rise to the level of those in *Castro*, and applying *Castro* to this case would violate the Supreme Court's direction in *Kisela* to avoid defining the clearly established law at a high level of generality. Plaintiff has not presented, and the Court has not identified, any caselaw showing that the alleged conduct was clearly established as a constitutional violation at the time of the alleged incident. County Defendants, thus, are protected from suit by qualified immunity. Amendment, therefore, cannot resuscitate Plaintiff's claim and would be futile.

## CONCLUSION

The Court GRANTS County Defendants' Motion to Dismiss (ECF 11) with prejudice. The Washington County Defendants are dismissed from this action. Defendant Collins, who has answered, remains.

**IT IS SO ORDERED**.

DATED this 5th day of April, 2021.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge